Melvin Jones Jr - Pro Se Plaintiff

1935 Hosler St - Flint, Michigan 48503

Ph #810-962-6225

Email: meljonesjr@gmail.com

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT MICHIGAN

CASE # 2:21-cv-10937  AJT  EAS

Honorable Judge: Arthur J. Tarnow

Plaintiff Jones' First Amended Complaint with an APPLICATION FOR APPOINTMENT OF CIVIL COUNSEL in the instant lawsuit (e.g. even if such proceeds as an individual lawsuit).

Melvin Jones Jr,

Plaintiff

v.

Veolia North,

Defendant

----------------------------------

## INTRODUCTION:

____Plaintiff Melvin Jones Jr., is a disabled person per MCL 257.19a.  And, Jones' Michigan State Driver's License is medically suspended due to what can best be described by Jones as linked to a communication impairment.  Additionally, Jones has serious vision impairment (e.g. as defined [at a bare minimum by the Americans with Disability Act [ADA])--- and Jones requires large print.

Further, due to my/ Melvin Jones Jr.'s medical disability I AM NOT ABLE TO PRESENT MY CASE IN THIS LAWSUIT [i.e. which is to say, I appreciate the Honorable Court being willing to allow me to attempt to amend my complaint to explain the reason that I believe that I as a Black African American indigent disabled resident of the City of Flint have (I believe, as best that I can tell) HAVE VALID CLAIMS AGAINST VEOLIA NORTH here.  However I, Melvin Jones Jr. LACK the capacity (i.e.

**<u>either financially to pay for an attorney) or actual physical ability)) to present his case</u>** <u>:</u>

*Plaintiff Jones, believes that he/ Jones, HAS shown an adequate basis to request counsel to provide representation under 28 U.S.C. § 1915(e)(1).*

*Accordingly, I am unable to determine if this lawsuit is appropriate for Class Action Certification.  Plaintiff now asserts in his FIRST amended complaint (e.g. per the ORDER directing Jones to file an Amended Complaint) claims: under the Americans with Disability Act, 42 USC S. 1981, and 42 USC S. 3613) and  he has provided adequate basis to appoint counsel under that statute.  For actions under said statues provides discretionary authority for appointing counsel "in such circumstances as the court may deem just." It provides no statutory right to counsel, only "a statutory right to request appointed counsel at court expense."  The Court has "extremely broad" discretion to appoint counsel here.  For example,  the Tenth Circuit has identified factors that courts consider when evaluating a motion for appointment of counsel. Appointment of counsel is only appropriate under § after the plaintiff has affirmatively shown "(1) financial inability to pay for counsel;*

*<u>(2) diligence (e.g. in the related Flint Water Crisis case …Jones WAS previously represented by NAPOLI LAW FIRM…. However, in mandamus # 21-1174 --- Jones RAISED ISSUES OF CONCERN AS TO THE "LEAD BONE SCAN METHOD AND DEVICE NOT BEING SAFE FOR HUMANS…. And (in short) NAPOLI LAWFIRM withdrew their representation of disabled Jones (e.g. I feel that I WAS WRONGLY ABANDONED by Napoli in said instance)…. Especially given that I believe that I was CORRECT IN MY COCERNS)</u> in attempting to secure counsel; and (3) meritorious allegations of discrimination." As "an aid in exercising discretion" in close cases, the Court should also consider whether the plaintiff has the "capacity to present the case without counsel."  For the reasons aforementioned … I, Melvin Jones Jr. believe that I should be appointed counsel in the instant case (e.g. even if such proceeds as an individual lawsuit).*

*JURISDICTION:*

*Federal Question, 42 USC S. 1983, 42 USC S. 3613, and the Americans with Disability Act.*

*<u>CLAIM - 1 Americans with Disabilities Act Violation</u>:*

*Pro Se Plaintiff, Melvin Jones Jr., is a disabled person as defined by the Americans with Disabilities Act.   And, On or about May 1st, 2021… Jones requested from defense counsel for VEOLIA a LARGE-PRINT version of the 'contract' between VEOLIA and the City of Flint as a reasonable accommodation. Which is to say, the ORIGINAL contract FAILED to be set forth in a FONT SIZE which (older - i.e. persons over 50 years of age for example) vision impaired Residents of the City of Flint could ACTUALLY READ readily and thereby attempt to understand the deficiencies therein said contract.   And, thereby I believe such causes the contract to be "SLOPPY" for lack of a legal-term.   And, this [e.g. the initial failure to MAKE a contract in a format ACCESSIBLE to the seriously vision impaired residents of the City of Flint (e.g. such as Pro Se Plaintiff Melvin Jones Jr, [and] VEOLIA's failure to provide such Large Print Contract upon my WRITTEN ADA Accommodation request… thereby violates my rights per the American with Disabilities Act; and here, VEOLIA literally specializes in contract formation [e.g. is a self-described global leader of such --- which is to say, VEOLIA knew or should have known of the ADA requirement here, but failed to adhere to such.*

## CLAIM - 42 USC S. 1981 violation:

The City of Flint, Michigan is approximately 57% Black African American population (e.g. a primarily Black African American City); and Pro Se Plaintiff Melvin Jones Jr., is a Black African American resident of the City of Flint. VEOLIA NORTH has a history of Environmental Injustice Race Discrimination against Black African American Cities/ Residents (e.g. such as Plaintiff Jones); As a matter of context for the Honorable Court...

Jones' Section 1981 Claim against Veolia: They [e.g. Veolia] ain't done nothin' (this is an undisputed fact) ---- here, Veolia ain't done nothin' as required per Veolia's SLOPPY CONTRACT. And, here ....Veolia ain't done nothin' as to Veolia's SLOPPY CONTRACT due to race animus against poor Black Communities [inferred **SEE THE TWO ATTACHMENTS AFFIXED HERETO (i.e. EPA excerpts)** by Veolia's pattern and practice] such as the City of Flint (i.e. which is a violation of my Federal Rights Protected by 42 USC 1981 because I am a Black African American resident of the City of Flint, who pays property taxes [i.e. said SLOPPY VEOLIA CONTRACT is in actuality a SLOPPY CONTRACT between Veolia and ME {Black Disabled

*Flint residentMelvin Jones Jr.}; and Pursuant to S. 1981.... I am seeking to "make" and "enforce" a contract (e.g. The SLOPPY CONTRACT between Veolia and myself).*

*Here… I AM NOT ABLE TO PROPERLY READ THE CONTRACT due to my serious vision impairments (e.g. so literally my informal caregiver [and] informal nest of friend Colleen Connors attempted to read such [e.g. however, Colleen has vision problems also]) ---- however, SAID VEOLIA SLOPPY CONTRACT amounts to [race discriminatory against the primarily Black African American City of Flint [e.g. in view of said VEOLIA's PATTERN and PRACTICE of such] in that the literally formation and wording of the contract is DECEPTIVELY VAGUE on the part of VEOLIA in that there IS NO specific action that VEOLIA must perform to obtain the $40,000.xx.*

*and, According to Colleen… there WAS TO BE COMMUNICATIONS WITH CUSTOMERS [e.g. HOWEVER, the contract DOES NOT SET FORTH ADA COMMUNICATION WITH FLINT CUSTOMERS. The "communications with customers" reasonably infers that the ADULT WATER CUSTOMERS are the ULTIMATE STAKEHOLDERS/ decision makers in that the City of Flint at*

*the time was under "EMERGENCY MANAGEMENT via the emergency manager Michigan State Law".... Such that the SLOPPY CONTRACT should have been ratified by the CITIZENS OF FLINT/ i.e. water customers (current and future).   And, thereby NOW I, Black African American  citizen/ resident of the City of Flint (e.g. WATER CUSTOMER) ….seek to MAKE and/ or ENFORCE said "SLOPPY VEOLIA CONTRACT".*

*Simply put --- the residents of the City of Flint (water customer "players") contractual rights as to the SLOPPY VEOLIA Contract with the City of Flint ARE DEPRIVED from making said contract on the basis on race discrimination on the part of VEOLIA against Black African American mjority city  Flint residents such as myself (e.g. Black African American  Pro Se Plaintiff Melvin Jones Jr.).*

## CLAIM - 42 USC S. 3613 HUD Fair Housing Act Violation:

*Here, VEOLIA is covered by the Fair Housing Act,  in that VEOLIA is a housing provider per HUD's definition of housing provider.*

*____The aforementioned conduct of the part of VEOLIA results in interference and deprivation of Jones' use and enjoyment of*

*his home in the City of Flint due to fear of lack of safety of the water, and continuing fear of WORSENING of my health conditions due to previous exposure and ingestion of the water in my home in Flint --- for example, whereby it is literally a burden and it is deflating for me to look at my kitchen faucet area, and I spend a large amount of my welfare food card on home delivery of BOTTLED WATER (e.g. undue financial burden linked to literally living in my home). Also, due to my home being located in the City of Flint, it (as best I can tell) is SUBJECT TO NOT BEING ELIGIBLE FOR LOANS. Also, due to my home being located in the City of Flint (e.g. Flint is an impoverished City).... The City of Flint's BUDGET is unduly strained --- for example, there is a VERY HIGH CRIME RATE IN THE CITY OF FLINT (e.g. which further deprives me of full and equal use and enjoyment of my home on account of me being disabled and Black African American).*

## HARM:

*Jones suffers continuing harm as a result of the aforementioned conduct of VEOLIA NORTH. Which includes continuing harm to Jones' property and person, and deprivation of Jones' EQUAL ACCESS to VEOLIA's contract with the City of Flint.*

## JURY DEMAND:

NONE.

## PRAYER FOR RELIEF:

As deemed Just and Fair by the Honorable Court.

Respectfully Submitted,

Date: 5-3-2021

Signed:....................................................................................

Melvin Jones Jr. - Plaintiff Pro Se

United States Environmental Protection Agency, Region 5
Air Programs Branch
Air & Radiation Division
77 West Jackson Boulevard
Chicago, Illinois 60604



Response to Comments on
EPA's Draft Revised Air Pollution Control Title V Permit to Operate
No. V-IL-1716300103-2014-10 for

Veolia ES Technical Solutions, L.L.C.
Sauget, Illinois

June 2019

Case 5:21-cv-10937-JEL-EAS   ECF No. 15, PageID.104   Filed 05/03/21   Page 12 of 17

Response to Comments on EPA's Draft Revised Air Pollution Control Title V Permit to Operate No. V-IL-1716300103-2014-10 for Veolia ES Technical Solutions, L.L.C., Sauget, Illinois

National Priorities List (NPL) indicator (*Id*.). Thus, EPA believes that commenters' concerns with respect to nearby TRI or Superfund sites have appropriately been considered in the determination of the EJ status of the Sauget area. The EJ status of the area where the Veolia facility is located and the proximity of the Veolia facility to other sources of environmental concern does not demonstrate any deficiency in the Draft Permit or that EPA's action is arbitrary and capricious.

To the extent the commenters alleged specific deficiencies in individual provisions of the Draft Permit (one commenter identified an alleged "backtrack on the permit requirements" contained in the January 2017 Permit), EPA has included responses to comments in this document which explain the basis for the differences between the January 2017 Permit and the Draft Permit. To summarize, the revised permit includes requirements that would minimize emissions from the Veolia facility, including enhanced feedstream analysis procedures to better quantify metal emissions, requirements for ACI systems that will reduce mercury emissions from all three incinerators, and other monitoring and testing requirements. *See also* [RTC 10](), [RTC 11]() and [RTC 12](), above.

30. **Comment:** *Veolia's facility sits in unincorporated Sauget, Illinois, adjacent to the city of East St. Louis. East St. Louis ranks among the lowest cities in the state in terms of income, and the inhabitants are overwhelmingly people of color. It is unacceptable for Veolia to leverage the economic and political vulnerability of the city's residents by continuing to emit toxic metals and volatile organic compounds (VOC) into the air they breathe. A staggeringly high proportion of community residents currently suffer from asthma, respiratory diseases, and cancers as a result of poor air and water quality. Ignoring the urgent need to protect public health in this city would be in blatant contradiction with the EPA's official mission to protect human health and the environment. In 2017, the EPA proposed a permit which required Veolia to install multi-metals monitoring systems on each of its three incinerators. At the time, EPA defended this decision as necessary to collect data on emissions of toxic emissions, which can be used to identify potential lack of compliance with the Clean Air Act. Since then, EPA has inexplicably removed this provision without publicly explaining the decision to do so. Allowing Veolia to continue expelling lead, arsenic, and mercury- among other substances-into the lungs of an economically under-resourced, African-American community perpetuates the trend of environmental racism in this country, and should be unacceptable to all. What is happening here is racism, environmental injustice and murder. The lack of multi-metals monitoring and subsequent lack of communication with the low-income and minority community is an act of extreme environmental racism and classism. It is also in direct opposition to the ethics and value code of Veolia, itself. While the company "ensures strict compliance with the*

Case 5:21-cv-10937-JEL-EAS   ECF No. 15, PageID.105   Filed 05/03/21   Page 13 of 17

Response to Comments on EPA's Draft Revised Air Pollution Control Title V Permit to Operate No. V-IL-1716300103-2014-10 for Veolia ES Technical Solutions, L.L.C., Sauget, Illinois

*international laws and treaties governing people's human and social rights," the current permit is a blatant example of environmental racism and classism.*

*See* Commenters 137- 310, 315, 317, 328, 329, 332, 333, 336, 345.

**EPA Response:** As noted in RTC 29, above, EPA has long worked to address EJ concerns in its actions. EPA agrees that the Agency's mission is to protect the environment and human health. EPA has determined that the facility is located in an area that has a significant proportion of low-income and minority communities. Further, EPA identified the area in which the facility is located as an EJ community.

As previously noted (*see* RTC 29, above), a Title V permit includes pollution control requirements from federal or state regulations that apply to a source. The Title V operating permit program generally does not authorize permitting authorities to establish new substantive air quality control requirements (referred to as "applicable requirements") other than monitoring, recordkeeping, reporting and other compliance requirements necessary to assure compliance with existing applicable requirements. *Citizens Against Ruining the Environment v. EPA*, 535 F.3d 670, 672 (7th Cir. 2008) ("Title V does not impose *additional* requirements on sources but rather consolidates all applicable requirements in a single document to facilitate compliance." (emphasis added)); *see In the Matter of Onyx Environmental Services,* Petition No. V-2005-1 (Order on Petition) (February 1, 2006) at 2. The Title V program is a vehicle for ensuring that existing air quality control requirements are appropriately applied to facility emission units in a single document and that compliance with these requirements is assured. *Onyx* at 2. Thus, EPA generally does not have authority under Title V to impose new substantive emissions control requirements beyond those monitoring, recordkeeping, reporting and other compliance requirements that are necessary to assure compliance with existing applicable requirements.

Among other applicable requirements (including requirements from construction permits, federal air quality rules and the Illinois SIP as we discussed at length in Section 4.2 of the 2014 SOB), Veolia must comply with the emissions control requirements of the HWC NESHAP. The standards in the HWC NESHAP implement section 112(d) of the CAA by requiring hazardous waste combustors (HWCs) to meet HAP emission standards reflecting the performance of the maximum achievable control technology (MACT). This regulatory structure is a vital part of Congress' effort to address human health concerns in the CAA. The applicable requirements of the HWC NESHAP are contained in the Draft Permit. The commenter has not identified, nor is EPA aware of, any additional applicable requirements that may be applicable to Veolia's operations. EPA has done what we can under the CAA: we have included all of the applicable requirements and ensured there is

Case 5:21-cv-10937-JEL-EAS   ECF No. 15, PageID.106   Filed 05/03/21   Page 14 of 17

Response to Comments on EPA's Draft Revised Air Pollution Control Title V Permit to Operate No. V-IL-1716300103-2014-10 for Veolia ES Technical Solutions, L.L.C., Sauget, Illinois

adequate monitoring, recordkeeping, and reporting in this Title V permit. *See* RTC 10, RTC 11, RTC 12 and RTC 26, above.

Finally, EPA disagrees that the changes between the January 2017 Permit and the Draft Permit were not explained at the time of issuance of the Draft Permit. The 2018 SOB (*see* Section 2.0) explained the changes proposed in the July 2018 Draft Permit as well as the circumstances that prompted EPA's decision to reevaluate its conclusions in the January 2017 Permit. EPA has also included responses to comments in this document which reiterate the basis for the differences between the January 2017 Permit and the July 2018 Draft Permit. *See, e.g.,* RTC 10, RTC 11, RTC 12 and RTC 26, above.

*See also* RTC 34, below.

31. **Comment:** *It is unconscionable that so many sources of contaminants have been permitted to be sited in a concentrated manner in and around East St. Louis, Cahokia, National City, Washington Park and surrounding communities. This is what environmental racism looks like. You don't see these kinds of pollutants in Ladue, Chesterfield or Clayton. You see it in low income level areas. Considering this, and the cumulative and synergistic adverse health impacts of concentrating so many sources of contaminants in one area, we stand with those demanding that the EPA act in conformance with the precautionary principle, and restore the terms and conditions contained in the January 2017 Permit. EPA should make sure that any such polluting company for which it is responsible does not locate in the United States, let alone East St. Louis. The community would support an EPA policy that would end the practice of incinerating hazardous waste in the first place.*

*See* Commenters 137- 310, 325, 334, 338, 349.

**EPA Response:** EPA concurs that the area surrounding the Veolia facility has many sources of air pollution. However, we disagree with the implication that EPA has authority under Title V to deny a Title V permit renewal because many other sources of air pollution are located in proximity of the source. While EPA has authority to deny a Title V permit under the criteria in 40 C.F.R. § 71.7, the regulations do not authorize EPA to deny an application that meets the completeness criteria in 40 C.F.R. § 71.5(a)(2). Further, as noted in RTC 29, above, while EPA acknowledges that the combined risks from aggregate exposures to multiple agents or stressors can be an important consideration, EPA is not addressing, and cannot address cumulative risks in this permit as there is no underlying applicable requirement that allows us to do so. EPA has considered cumulative risks in its assessment of the EJ status of the Sauget area (through its EJ screening tool, EJSCREEN) and in its determination of the need for enhanced

United States Environmental Protection Agency, Region 5
Air Programs Branch
Air & Radiation Division
77 West Jackson Boulevard
Chicago, Illinois 60604

Response to Comments on
EPA's Draft Revised Air Pollution Control Title V Permit to Operate
No. V-IL-1716300103-2014-10 for

Veolia ES Technical Solutions, L.L.C.
Sauget, Illinois

June 2019

Case 5:21-cv-10937-JEL-EAS ECF No. 15, PageID.108 Filed 05/03/21 Page 16 of 17

Response to Comments on EPA's Draft Revised Air Pollution Control Title V Permit to Operate No. V-IL-1716300103-2014-10 for Veolia ES Technical Solutions, L.L.C., Sauget, Illinois

D.     **ENVIRONMENTAL JUSTICE AND OTHER COMMENTS**

29.     **Comment:** *EPA has confirmed that it considers the area surrounding Veolia as an area with EJ concerns. Veolia emits a variety of air pollutants including HAPs, as do other nearby industrial facilities including chemical and ethanol plants and copper and steel manufacturing plants. Due in part to these facilities' emissions, St. Clair County is included in the St. Louis, MO-IL nonattainment area for both the 1997 $PM_{2.5}$ National Ambient Air Quality Standard (NAAQS) and the 2015 ozone NAAQS. Legacy pollution also poses a threat to community members in the Sauget area. St. Clair County is home to four Superfund sites, two of which are in Sauget. Sauget is also where the Solutia, Inc. facility, a RCRA corrective action site, is located. Finally, Toxic Release Inventory (TRI) data show that facilities in Sauget dispose of or release large amounts of toxic chemicals every year. Nine facilities in Sauget disposed of or released 898,000 pounds of TRI-covered chemicals in 2017, with Veolia responsible for the largest share. EPA's EJSCREEN tool shows that the community surrounding Veolia (within a 5-mile radius) scores in the 90th percentile or above for every "EJ Index", EPA's combined measures of demographic and environmental indicators, in both the state of Missouri and in EPA Region 5. The area surrounding Veolia has a significant minority population (about 65 percent), and a substantial proportion of all persons living within three miles of Veolia (over 30 percent) live below the federal poverty level. Due to these concerns and other site-specific factors the multi-metals monitoring devices and the enhanced feedstream analysis procedures found in the January 2017 Permit are necessary components of any Title V permit for Veolia and should be restored. EPA has an obligation to impose these monitoring and testing requirements as necessary means to ensure that Veolia is in compliance with the HWC NESHAP. These requirements are also essential to protect the Metro East's vulnerable communities, which bear a disproportionate environmental burden as a result of the area's concentration of large industrial polluters and contaminated sites. EPA should be acting "to develop permits that address EJ issues to the greatest extent practicable under existing environmental laws," in accordance with their own goals, which were enumerated in Plan EJ 2014. This goal stems from EPA's responsibility as a federal agency under Executive Order 12898 to "make achieving environmental justice part of its mission by identifying and addressing, as appropriate, disproportionately high and adverse human health or environmental effects of its programs, policies, and activities on minority populations and low-income populations." EPA has accurately identified Sauget as an at-risk area and should address EJ concerns there "to the greatest extent practicable." The backtrack on the permit requirements will only magnify the air pollution problem and its detrimental effects on the community.*

Case 5:21-cv-10937-JEL-EAS ECF No. 15, PageID.109 Filed 05/03/21 Page 17 of 17

Response to Comments on EPA's Draft Revised Air Pollution Control Title V Permit to Operate No. V-IL-1716300103-2014-10 for Veolia ES Technical Solutions, L.L.C., Sauget, Illinois

> *The EJ concerns with respect to Veolia's facility also constitute an important site-specific factor in relation to the other two commercial hazardous waste incinerators in Region 5. The EJ indices calculated by EJSCREEN for the communities surrounding the other two incinerators (within a 5-mile radius) in Region 5 are considerably lower than Veolia's; one site scores in the 64th percentile or lower and the other scores in the 46th percentile or lower for every category in their respective states. The EJ concerns surrounding the Veolia facility are especially serious as compared to the other hazardous waste facilities in Region 5 and merit special attention in the permitting process.*

*See* Commenters 323, 327, 336.

**EPA Response:** The federal government generally, and EPA specifically, has recognized the importance of environmental justice since at least 1983, when the United States General Accounting Office conducted the study: "Siting of Hazardous Waste Landfills and Their Correlation with Racial and Economic Status of Surrounding Communities."[60] EPA has since established a number of tools and resources to facilitate and support the incorporation of environmental justice considerations into agency actions, including air permitting. *See* https://www.epa.gov/sites/production/files/2017-09/documents/epa_office_of_environmental_justice_factsheet.pdf. These cross-cutting efforts aim to create consistency and clarity around how EPA identifies and addresses environmental justice concerns. Further, EPA Region 5 implements EPA's EJ policy through the "EPA Region 5 Regional Implementation Plan to Promote Enhanced Public Participation in Permitting Actions," which is publicly available at https://www.epa.gov/sites/production/files/2016-12/documents/r5_permitting_and_engagement_plan_2016_update.pdf. For the Veolia CAA Title V permit, as discussed in RTC 1, above, EPA has also followed the recommendations of NEJAC as contained in its report, titled "Enhancing Environmental Justice in EPA Permitting Programs," NEJAC (April 2011), pages 20-21 (Recommendations 37 and 38), available at https://www.epa.gov/sites/production/files/2015-02/documents/ej-in-permitting-report-2011.pdf.

When examining the EJ issues related to the Veolia facility, EPA determined that the facility is located in an area that has a significant proportion of low-income and minority communities. Further, EPA concluded that the area in which the facility is located is disproportionately affected by environmental pollution. The Agency therefore worked to conduct meaningful public engagement and establish appropriate permit terms and conditions to address EJ concerns to the extent supported by the relevant information and

---

[60] https://www.gao.gov/assets/150/140159.pdf